IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RONALD ROSS HARRIS, #138 921, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:16-CV-243-WHA |
| | ) | [WO] |
| CASSANDRA CONWAY, | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff Ronald Harris, an inmate in the custody of the Alabama Department of Corrections, files this *pro se* civil rights action under 42 U.S.C. § 1983. He sues Cassandra Conway, Director of Classification for the Alabama Department of Corrections ("ADOC"), in her individual capacity. Harris complains that Conway has refused to correct and remove erroneous information in his inmate file regarding an escape conviction which he alleges negatively affects his custody level. Conway's conduct, Harris claims, has violated his due process and equal protection rights. For relief, Harris requests the erroneous information be removed from his inmate file and that he be awarded "compensatory judgment for costs of litigation." Doc. 1.

Conway filed an answer, special report, and supporting evidentiary materials addressing Harris's claims for relief. Docs. 12, 13. In these filings, Conway denies that she acted in violation of Harris's constitutional rights. *Id.* Upon receipt of Conway's special report, the court issued an order directing Harris to file a response, including sworn affidavits and other evidentiary materials, and specifically cautioning Harris "the court may at any time thereafter and without notice to the parties (1) treat the special report and any supporting evidentiary materials as a motion for

summary judgment." Doc. 14. Harris responded to Conway's special report, *see* Doc. 24, but his response does not demonstrate there is any genuine issue of material fact. *See* Doc. 14 at 2. The court will treat Conway's report as a motion for summary judgment, and it resolves this motion in her favor.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc*., 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−324.

Conway has met her evidentiary burden. Thus, the burden shifts to Harris to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery v. Sarasota White Sox, Inc*., 64 F.3d 590, 593−594 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond

the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate there is a genuine dispute of material fact) (internal quotations omitted).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).  A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the non- moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Harris's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

## II. DISCUSSION

### A. False Information

Harris claims that Conway is relying on false information to deny him a less restrictive custody status. The allegedly false information on which Conway relies concerns an escape from the Cleburne County Jail between June 29, 1989 and June 30, 1989.[1] Doc. 1.

---

[1] To the extent that Harris raises additional allegations of constitutional violations in his opposition which were not affirmatively pled in his complaint, under settled law Harris may not "amend" his complaint through his opposition by raising a new claim(s). *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (rejecting a new basis for a pending claim raised during summary judgment proceedings); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004) (finding the Rules of Civil Procedure do "not afford plaintiffs with the opportunity to raise new claims at the summary judgment stage."). The court, therefore, addresses Harris's false information claim as alleged in the complaint, and considers the facts only to the extent that they support this claim. *See Chavis v. Clayton*

The undisputed records reflect that in May of 2009, a classification specialist recommended that Harris be reclassified to medium custody because he had more than two escape convictions. In August of 2009, a member of the Central Review Board approved the recommendation. The decision to approve Harris's reclassification recommendation was made in accordance with ADOC classification criteria which bars inmates with more than two escapes from being classified to less than medium custody. The escape history used to reclassify Harris in August 2009 included an Escape I conviction entered against him by the Circuit Court for Cleburne County on February 23, 1989, for which he received a life sentence; an attempted escape from the Heflin Police Department on December 19, 1981, for which Harris paid fines and costs; and a misdemeanor escape conviction against Harris on October 9, 1985, by the Haralson County, Georgia, Superior Court for which he received twelve months of probation. Harris's classification inmate summary sheet maintained by the ADOC also contains a copy of a warrant recall order dated March 10, 1992. The recall order was entered for a warrant issued on June 30, 1989, against Harris for a charge of Escape I because the state decided not to prosecute Harris for that offense.  Defendant Conway states that although Harris was not prosecuted for the 1989 escape, such information remains a part of his inmate classification summary based on evidence that the offense occurred.  The evidence does not, however, reflect that prison classification officials relied on any information regarding the June 1989 escape in deciding to reclassify Harris to medium custody. Doc. 13-1; Doc. 13-2. *See also* Doc. 25-1.

---

*Cnty. Sch. Dist.*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (refusing to address a new theory raised during summary judgment because the plaintiff had not amended the complaint). Further, Harris makes reference in his opposition to filing an amendment to his complaint in August of 2016 in which he asserted an additional claim for relief. Doc. 24 at 3. The court, however, denied Plaintiff's request to amend his complaint. *See* Docs. 19, 26.

In *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), the Court held that reliance on admittedly false information to deny a prisoner consideration for parole was arbitrary and capricious treatment which violated the Constitution. The appellate court, however, carefully distinguished its holding in *Monroe* from its prior decision in *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir. 1982).

> Our holding today does not conflict with our earlier holding in Slocum, *supra*. In Slocum, the plaintiff, who had been denied parole, made the conclusory allegation that the Board must have relied upon erroneous information because otherwise the Board would surely have granted him parole. *Slocum*, 678 F.2d at 941. The plaintiff then sought to assert a due process right to examine his prison file for the alleged errors. Unlike the instant case, in Slocum the state did not admit that it had relied upon false information in denying parole nor did the plaintiff present any evidence that his prison file even contained any false information. We held in Slocum that prisoners do not state a due process claim by merely asserting that erroneous information may have been used during their parole consideration. *Id*. at 942. We also determined that prisoners do not have a due process right to examine their prison files as part of a general fishing expedition in search of false information that could possibly exist in their files. *Id*. In the case at bar, we are confronted with prison authorities who admit that information contained in Monroe's files is false and that they relied upon such information, at least in part, to deny Monroe parole and to classify him as a sex offender. As we stated, the parole statute does not authorize state officials to rely on knowingly false information in their determinations. *Thomas [v. Sellers]*, 691 F.2d [487] at 489 [(11th Cir. 1982)].

*Monroe*, 932 F.3d at 1442. *Slocum* controls the disposition of the instant false information claim. Conway has not admitted that information used in the decision to reclassify Harris to medium custody was false, fabricated, incorrect or erroneous. Harris has failed to offer any evidence which indicates that Conway or any other classification personnel have knowingly used or relied on false or fabricated information to classify him as a medium custody inmate. Harris's conclusory allegation regarding the use of fabricated information does nothing more than raise the possibility that information in his records may be false, and this mere possibility fails to provide a basis for relief. *Monroe*, 932 F.2d at 1142; *Jones v. Ray*, 279 F.3d 944 (11th Cir. 2001) ("[P]risoners cannot

make a conclusory allegation regarding the use of [false] information as the basis of a due process claim.").

The record establishes that Harris has failed to establish a genuine dispute of material fact concerning whether Defendant Conway, or any other ADOC classification personnel, relied on admittedly false information either in the decision to classify Harris as a medium custody inmate or the determination that he should remain at that custody level. Accordingly, Defendant Conway's motion for summary judgment on this claim is due to be granted.

**B. Due Process**

To the extent Harris argues that he is entitled to placement in a more favorable custody classification, this claim provides no basis for relief. Under settled law, an inmate may be deprived of a liberty interest protected by due process in only two circumstances.

> The first is when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. The second situation is when the state has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Kirby v. Siegelman*, 195 F.3d 1285, 1290-91 (11th Cir. 1999) (quotation omitted) (*citing Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).

*Morales v. Chertoff*, 212 Fed. App'x. 888, 890 (11th Cir. 2006). Harris's claim fails to implicate either situation, as his assigned custody classification is not "so severe that it essentially exceeds the sentence imposed by the court," and the administrative regulations governing classification "do not bestow a benefit vis-a-vis the custody classification, the deprivation of which would result in an 'atypical and significant hardship' on [Harris]. *See Kirby*, 195 F.3d at 1290-91; *see also Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994) (finding that the U.S. Constitution affords no liberty interest in a prisoner's custody classification); *cf. Meachum v. Fano*, 427 U.S. 215, 224–26, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (holding that a prisoner has no liberty interest in an

assignment to any particular prison, regardless of whether the conditions of one prison are 'much more disagreeable' than another)." *Morales*, 212 Fed. App'x. at 890.

To the extent Harris argues that the decision to classify him as a medium custody inmate was arbitrary and unreasonable because the decision included reliance on an escape charge for which he was never prosecuted (Doc. 24), he is entitled to no relief. Even though the evidence does not support such an allegation, state officials may not deny or restrict access to less restrictive custody classifications for arbitrary or capricious reasons. *Hendking v. Smith*, 781 F.2d 850, 852 (11th Cir. 1986) (finding a classification system contains no inherent constitutional invalidity, but becomes constitutionally offensive only if "the regulation is administered maliciously or in bad faith."). Consideration of the details surrounding an inmate's criminal record in determining the inmate's custody classification, however, does not implicate the Constitution as it is rationally related to the legitimate state interest of ensuring that only those inmates best suited for lower custody classifications are so placed. *Cf. Conlogue v. Shinbaum*, 949 F.2d 378 (11th Cir. 1991); *see also Thornton v. Hunt*, 852 F.2d 526 (11th Cir. 1988) (finding that the denial of eligibility for incentive time benefits to inmate who received sentences of over 10 years "is rationally related to the legitimate purpose of preventing the early release of serious offenders [and] does not violate the … due process clause").

As explained above, the decision to classify Harris as a medium custody inmate was based on his three escape convictions. While information regarding an escape for which Harris was never prosecuted is part of his inmate file (Doc. 13-2), the record does not reflect that such information was considered by prison classification officials in assigning him a medium custody classification level. *See* Doc. 13-1. To the extent that Harris's arguments reflect his disagreement with prison officials' determination he meets the ADOC's classification criteria for a medium custody level

inmate, such disagreement does not make the decision arbitrary or capricious, and Harris presents

no evidence indicating that Conway or any other prison official responsible for his classification

engaged in arbitrary or capricious action by declining to recommend him for a lesser custody

status. *See Thornton*, 852 F.2d at 527. The court, therefore, concludes that the nature and

circumstances of the crimes for which Harris stands convicted meet the criteria for a medium

custody inmate status and this classification is "not arbitrary and capricious, but reasonable and

appropriate." *Hendking*, 781 F.2d at 852.

**C. Equal Protection**

Harris alleges in wholly conclusory terms that the conduct about which he complains

violated his right to equal protection. To establish a claim of discrimination cognizable under the

Equal Protection Clause, "a prisoner must demonstrate that (1) he is similarly situated to other

prisoners who received more favorable treatment; and (2) the state engaged in invidious

discrimination against him based on race, religion, national origin, or some other constitutionally

protected basis. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole*

*and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)." *Sweet v. Secretary, Department of*

*Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006). "[O]fficial action will not be held

unconstitutional solely because it results in a … disproportionate impact… . [An allegation] of ...

discriminatory intent or purpose [related to a constitutionally protected interest] is required to [set

forth] a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan*

*Housing Development Corp.*, 429 U.S. 252, 264-265 (1977).

"'Discriminatory purpose' … implies more than intent as volition or intent as awareness

of consequences.  It implies that the decision maker … selected … a particular course of action at

least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."

*Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991).  Where an inmate plaintiff challenges actions of a correctional official, exceptionally clear proof of discrimination is required.  *Fuller v. Georgia Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988).  Mere differential treatment of similarly situated inmates, without more, fails to allege a violation of the Equal Protection Clause.  *E & T Realty Company v. Strickland*, 830 F.2d 1107 (11th Cir. 1987); *McKleskey v. Kemp*, 481 U.S. 279, 292 (1987) (claims of mere disparity of treatment are insufficient to establish discrimination).

Harris fails to meet his pleading burden as he does not allege that Conway treated him differently because of some form of invidious discrimination based on a constitutionally protected interest. *Sweet,* 467 F.3d at 1319. Rather, he simply makes the conclusory assertion that Conway violated his right to equal protection. Because Harris's equal protection claim is insufficient to state a claim for relief, summary judgment is due to granted in favor of Defendant Conway.

### III. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Defendant's motion for summary judgment (Doc. 13) be GRANTED;

2.  This case be DISMISSED with prejudice;

3.  Judgment be ENTERED in favor of Defendant;

4.  Costs be taxed against Plaintiff.

It is further

ORDERED that **on or before June 27, 2018**, the parties may file objections. Any objections filed must specifically identify the factual findings and legal conclusions in the

Magistrate Judge's Recommendation to which the parties object.  Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, on this the 13th day of June, 2018.

/s/ Susan Russ Walker_____
Susan Russ Walker
United States Magistrate Judge